UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIIL TKACHEV,

                Petitioner,

   v.

ICE FIELD OFFICE DIRECTOR,

                Respondent.

Case No. C20-532-RSL-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action *pro se* to obtain release from detention or a bond hearing. (Pet. (Dkt. # 1).) Currently before the Court is the Government's motion to dismiss. (Mot. (Dkt. 5).) Petitioner filed an opposition (Resp. (dkt. # 9)) and the Government filed a reply (Reply (dkt. 10)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be DENIED, Petitioner's habeas petition be GRANTED, and that the Government be ordered to immediately release Petitioner on reasonable conditions of supervision.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

Petitioner is a native and citizen of the former USSR who was lawfully admitted into the United States as a refugee on September 20, 1990. (Hicks Decl. (Dkt. # 6) at ¶ 4; Waldrop Decl. (Dkt. # 7), Ex. B.) On April 2, 2018, ICE placed Petitioner in removal proceedings by issuing a Notice to Appear that charged him with removability under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of possession of Alprazolam in May 2017. (Hicks Decl. at ¶ 8; Waldrop Decl., Ex. B.) He was subsequently released on bond. (Hicks Decl. at ¶ 9; Waldrop Decl., Exs. E-F.)

On September 6, 2018, an immigration judge ("IJ") ordered Petitioner removed from the United States to Russia after he failed to appear at his immigration hearing. (Hicks Decl. at ¶ 10; Waldrop Decl., Ex. G.) Petitioner appealed to the Board of Immigration Appeals ("BIA"), which rejected his appeal on December 3, 2018. (Hicks Decl. at ¶¶ 11-12; Waldrop Decl., Ex. I.) Petitioner did not file a petition for review with the Ninth Circuit.

On July 25, 2019, ICE agents took Petitioner into custody and transferred him to the NWIPC after they encountered him at the Walla Walla jail for failure to appear. (Hicks Decl. at ¶ 13; Waldrop Decl., Ex. A.) ICE then began to arrange for Petitioner's removal to Russia. (*See* Hicks Decl. at ¶¶ 14-23, 28-33.)

On March 18, 2020, Petitioner had a bond hearing before an IJ. (Waldrop Decl., Ex. M.) The IJ denied bond, finding that the U.S. Department of Homeland Security ("DHS") presented clear and convincing evidence that Petitioner is a flight risk. (*Id.*) Petitioner did not appeal to the BIA.

On April 8, 2020, Petitioner filed the instant habeas petition. (Pet.) On May 13, 2020, the Government filed the motion to dismiss that is currently before the Court. (Mot.) After the

REPORT AND RECOMMENDATION - 2

motion was fully briefed, the Court ordered the Government to file a status update regarding the efforts to remove Petitioner. (8/5/2020 Order (Dkt. # 11).) The Government responded with the following information.

On May 20, 2020, the ICE Office of Enforcement and Removal Operations ("ERO") in Seattle learned that a travel document for Petitioner was ready for issuance and that the ICE Headquarters Removal and International Operations ("HQ RIO") was working with the Russian Embassy on the approval of a charter flight. (Jennings Decl. (Dkt. # 13) at ¶ 4.) On July 28, 2020, HQ RIO advised ERO Seattle that the charter flight was still not confirmed with Russia and recommended removal via commercial air. (*Id.* at ¶ 10.) On August 6, 2020, an unescorted removal via commercial flight was approved, and Petitioner's case was forwarded to the Travel Coordinator for flight scheduling. (*Id.* at ¶ 11.) As of August 12, 2020, the Travel Coordinator was in the process of scheduling his flight.

On August 27, 2020, the Court ordered the Government to file a recording of Petitioner's bond hearing and to provide a second update regarding Petitioner's removal. (8/27/2020 Order (Dkt. # 14).) The Government filed the requested recording and provided the following update regarding removal. On August 17, 2020, Petitioner's removal via commercial flight was tentatively scheduled for September 5, 2020. (Supp. Hicks Decl. (Dkt. # 18-1) at ¶ 3.) The following day, however, his flight was rescheduled to October 2020 due to COVID-19 travel restrictions. (*Id.* at ¶ 4.) On August 19, 2020, a consul of the Russian Embassy concluded that in 1997, Petitioner was reinstated with Russian Federation citizenship. (*Id.* at ¶ 5.) However, this was not documented in a Russian passport. (*Id.*) The consul determined that under Russian law, a travel document can only be issued in exchange for a lost or expired passport, and that Russia could not issue a travel document for Petitioner. (*Id.*) HQ RIO requested clarification from the

consul, and the consul directed HQ RIO to Federal Law of the Russian Federation August 15, 1996 No. 114-FZ. (*Id.* at ¶ 6.) HQ RIO sought further clarification from the consul regarding issuance of a travel document for Petitioner and reached out to the Department of State for assistance. (*Id.* at ¶ 7.)

Given that HQ RIO was in the process of clarifying the Russian consul's decision to deny the travel document request, the Court ordered the Government to file one final status report. (9/23/2020 Order (Dkt. # 19).) On October 7, 2020, the Government responded that it had no updated information to add to the record.

### III. DISCUSSION

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, such as Petitioner, who have been ordered removed. Under § 1231(a), DHS[1] is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). In this case, the removal period began on the date Petitioner's removal order became administratively final following the BIA's dismissal of his appeal. *See* 8 U.S.C. § 1231(a)(2)(B)(i). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are removable under 8 U.S.C. § 1227(a)(2); 8 U.S.C. § 1231(a)(6). Petitioner was ordered removed under § 1227(a)(2)(B)(i), and thus his detention comports with the statute.

Although § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely. In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

United States and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nevertheless, courts must remember that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The Ninth Circuit has explained that detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country. *See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008) (detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country). The Government has been attempting to remove Petitioner for over 14 months. On August 19, 2020, a consul of the Russian Embassy informed HQ RIO that Russia could not issue a travel document for Petitioner. (Supp. Hicks Decl. at ¶ 5.) Although the Government has sought clarification of this decision, nearly two months have passed without any evidence that Russia has changed its decision. Because the presumptively reasonable six-month period expired

REPORT AND RECOMMENDATION - 5

months ago and Russia has indicated that it will not issue a travel document, the Court concludes that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, Petitioner is entitled to immediate release on reasonable conditions.

### IV.    CONCLUSION

The Court recommends that the Government's motion to dismiss (dkt. # 5) be DENIED, that Petitioner's habeas petition (dkt. # 1) be GRANTED, and that the Government be ordered to immediately release Petitioner on reasonable conditions of supervision. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on 10/26/2020.

Dated this 9th day of October, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge